**ZUCKERMAN v. McCULLEY.**

No. 5619.

District Court, E. D. Missouri, E. D.

Dec. 10, 1947.

Rehearing Denied Jan. 23, 1948.

Samuel H. Liberman and Gideon H. Schiller, both of St. Louis, Mo., for plaintiff.

Louis E. Miller and B. Sherman Landau, both of St. Louis, Mo., for defendant.

HULEN, District Judge.

Defendant moves to quash the return of service in this case because it was not served in accordance with Rule 4(d) (1), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Under Rule 4(d) (1) service on an individual may be obtained by delivering a copy of the summons and the complaint to the defendant personally, or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering copies to an agent authorized by appointment or by law to receive service of process.

The return in this case reads as follows:

"I hereby certify and return, that on the 15th day of October 1947, I received the within summons, and executed same by serving the defendant, Una McCulley by leaving a true copy of Summons, together with copy of Complaint attached thereto, as furnished by the Clerk of the Court, with an elderly negro who answered the door and said that he was the janitor of the house but who would not give his name, at St. Louis, Missouri, on October 29, 1947."

At hearing on the motion it developed that the defendant lived at 955 Maple Place in St. Louis and operated a rooming house at 5097 Washington. Defendant was out of the City at the time of attempted service and the Deputy United States Marshal served the summons by leaving copy thereof, together with copy of the complaint, at the Washington address with the janitor.

Certainly the manner of attempted service does not meet the terms of the Rule but the plaintiff urges that there was a substantial compliance with the Rule and since the defendant ultimately received copies of the summons and complaint, defendant's motion should be overruled. It has been held that the Rule on service should be construed liberally to effectuate service where actual notice of suit has been received by the defendant. See Rovinski v. Rowe, 6 Cir., 131 F.2d 687, 689. In the Rovinski case service was obtained in Menominee, Michigan, which the defendant always considered his home, as the defendant kept some of his clothes and always had his bedroom ready for occupancy at that home of his widowed mother. Defendant was unmarried and his place of abode had been in different places in the United States for more than twelve years, particularly in the east, and finally at Duluth, Minnesota. It was held, however, that summons and complaint left at the home of defendant's mother was left at his usual place of abode under the Rules so as to give the court jurisdiction over defendant. This place had "been throughout his life the place of his legal residence, the place where his parents lived, where his mother lives now, the place called 'Home' and the one place to which he returns when he has the opportunity to do so * * *." The case of Skidmore v. Green, D.C., 33 F.Supp. 529, appears to us to be more in line with the facts of the present case. In the Skidmore case the defendant spent most of his time traveling about the country in an automobile and trailer, but in his application for license plates he gave as his address a house owned by his brother in New York State where he had formerly resided and to which his pension checks were mailed. It was held that the New York address was the usual place of abode for the purpose of service under the Rule.

While these cases illustrate the liberality with which the Rule for service of summons is construed, yet in our opinion they fall short of authority of plain-

tiff's position that the service in this case meets the Rule. It is true that the defendant represented to the Probate Court, and the same was entered of record, that her address was on Washington Avenue. Such was her address at the time the information was given. There is no evidence that the defendant or any of her agents ever falsely informed anyone as to the defendant's address. Assuming, without deciding, that defendant's act in giving the Washington street address as her residence for the files of the Probate Court should work an estoppel for her now to deny that to be her residence, we are still confronted with the requirement that in defendant's absence the summons and complaint should be left with "some person of suitable age and discretion then residing" in the dwelling house of defendant. As we read the cases substantial compliance with the Rule providing manner of service is required, and courts are without authority to nullify the plain requirements of the Rule providing how jurisdiction may be acquired over the person of defendant. Cohen v. American Window Glass Co., D.C., 41 F. Supp. 48; Mecartney v. Hoover, 7 Cir., 151 F.2d 694; Pioneer Utilities Corporation v. Scott–Newcomb, Inc., D.C., 26 F. Supp. 616; International Molders Union v. National Labor Relations Board, D.C., 26 F.Supp. 423. The return of the Deputy Marshal states that the summons and complaint were left with "an elderly negro who answered the door and said that he was the janitor of the house", and the evidence developed that is exactly what did happen, but there is no evidence of the janitor "residing therein." On the contrary the evidence is undisputed that the janitor only spent part of the day at the Washington Avenue address, doing janitor work, and we are unable to find any authority as a basis for holding under these circumstances that the janitor was residing within the house.

There is evidence from which the Court would conclude that the defendant contemplating service of summons left the City so personal service could not be obtained upon her. This did not prevent service within the statutory period for bringing this action.

Motion of the defendant to quash the return of service of summons is sustained and said return is quashed.

On Motion for Rehearing.

Plaintiff has filed a motion for rehearing on the Court's ruling on motion of defendant to quash return of service of summons. In ruling on the present motion we will supplement our previous memorandum on the same subject.

At the time we ruled on defendant's motion to quash return of service of summons it was plaintiff's position service of summons on defendant was good under Rule 4(d) (1), Federal Rules of Civil Procedure. Plaintiff now urges that the service of summons meets the requirements of the laws of Missouri, where service was had, and was therefore good under Rule 4, Federal Rules of Civil Procedure.

Were the question solely whether defendant's place of abode, or dwelling house, was 5097 Washington Avenue, we would hold the service good on the ground that defendant, as administratrix, having caused to be recorded in the probate court the Washington Avenue address as her place of residence, is in a suit against her as administratrix estopped to deny that as her place of residence. But the real question on motion to quash the service of summons is whether the party served, under substituted service, was a "person of" defendant's "family * * *."

The service was upon Henry Woods who describes himself as the janitor at the Washington Avenue address. Under what circumstances is substituted service on a servant, at defendant's residence, good?

The Missouri statute provides that service may be had upon an individual by delivering a copy of the summons and of the petition to the defendant personally or "by leaving a copy of the summons and of the petition at his dwelling house or usual place of abode with some person of his family" over the age of 15 years, or by serving the duly appointed agent of the defendant. Sec. 27, Laws of Missouri 1943, p. 366, Mo.R.S.A. § 847.27. The Missouri statute is similar to the service statutes in a number of States where a like

issue has been raised as is now before the Court. The cases are in agreement that service provided under the character of statute now being considered is constructive and to be valid must conform substantially to the requirements of the statute. See Colter v. Luke, 129 Mo.App. 702, 108 S.W. 608, 609. In the Colter case the Court discussed the meaning of the word family, and when the person upon whom service is obtained can be said to be a person of the family under the service statute:

"The word 'family' as used in the statute may be defined as 'a collective body of persons who live in one house, under one head or manager, including parents, children, and servants, and, as the case may be, lodgers or boarders.' 3 Words & Phrases Judicially Defined, p. 2673 [16 Words and Phrases, Perm. Ed., Family.]; Dobbins v. Thompson, 4 Mo. 118; Ellington v. Moore, 17 Mo. 424. The test to be applied in solving the question of whether a person to whom the papers are delivered by the officer belongs to the collective body is this: If the relation between him and the other persons of the household is of a permanent and domestic character, and not intended to be merely temporary, he is to be regarded as a person of the family on whom constructive service of process against another member may be made. In speaking of the persons of a family, the words 'person' and 'member' are synonymous, and may be used interchangeably. One could not be a person of a family without being a member, nor could he be a member without being a person."

The statute requires the service to be on a "person" of the family and the cases turn on whether the servant in the particular case is a person of the family. In the following case service on a servant was held to comply with the law providing for substituted service, a law substantially like that of Missouri, relied on by plaintiff: Lewis v. West Side Trust & Savings Bank, 286 Ill.App. 130, 2 N.E.2d 976.

The following cases, while not treating specifically the question of sufficiency of service, hold that a servant constitutes a normal and integral part of the family: People ex rel. Sagazei v. Sagazei, 1899,

27 Misc. 727, 59 N.Y.S. 701; Poor v. Hudson Ins. Co., C.C., D.N.H. 1800, 2 F. 432; Gaines v. Gaines, 1903, 109 Ill. App. 226.

In the following cases substituted service on a servant was held invalid: Moore v. Kasishke, 189 Okl. 336, 117 P.2d 113, 136 A.L.R. 1502; Mayer v. Griffin, 7 Wis. 82; Sullivan v. Walburn, 154 A. 617, 9 N.J. Misc. 280; Thompson v. Butler, 214 Iowa 1123, 243 N.W. 164.

Examination of the cases referred to, both those sustaining and holding invalid service on a servant, shows the courts base their decisions on substantially the same rules of law. The diversity in opinions results from the facts in the particular case. In the Lewis case service was had on a housemaid at defendant's usual place of residence. On the facts the Court held the maid servant was a member of the family within the terms of the Illinois service statute. The maid resided at the residence of the defendant. In the Moore case service was had on a Negro "servant" who was an employee of the defendant and whose duties consisted mainly in management of defendant's property. The Negro servant did not live on the premises but maintained his "own separate family and household." It was held the Negro servant was not a member of the defendant's family. In the Mayer case service was on a workman in the employ of defendant at his place of abode. The workman did not live on the premises and the Court held he was not a person of defendant's family. In the Sullivan case [154 A. 619, 9 N.J. Misc. 280], a maid was held not a person upon whom substituted service could be made where she "does not reside" in the home of the defendant. Also in the Thompson case it was held that a maid, having no fixed term of employment, receiving compensation by the week, being privileged to leave at any time, although having sleeping quarters in the home of defendant, was not a person of defendant's family on whom substituted service could be had. To the same effect was the ruling in Waber v. Schaffhauser, 34 Pa. D. & C. 348, where the return simply showed that the service was on a maid. The Court said it would not be presumed the servant was a member

of defendant's family and that some evidence was required to show that the maid was a resident and a continuous and permanent employee in the defendant's home. It is pointed out in the Thompson case that the theory upon which service may be had upon defendant by substituted service on a servant is based on a showing of a relationship of confidence based upon a highly personal interest, by which there could arise some reasonable assurance that the notice would reach the defendant.

The record in this case shows that Henry Woods was a janitor at 5097 Washington Avenue but that he was "living at 2602 Pine" in St. Louis. His hours of service at the Washington Avenue address were from 5:30 in the morning until 11 a. m., and from 3 p. m. until "4:30 or 5:00." He testified regarding receiving the summons in this case as follows:

"Q. Tell the Court what transpired then. A. Well, when he brought it there, he ring the the door bell, I went to the door bell, but I didn't open the door very wide, and he told me to give these papers to Mrs. McCulley, and then I said: 'I don't know anything about the papers. You will have to give them to her yourself.' So he tried to throw them in the door, but by me standing in the door they fell on the outside of the door, and he walked away."

On cross-examination the same witness testified:

"Q. Why is it, Mr. Woods, that you opened the door just a little bit when you heard it ring on this day? A. Because I did not know who it was, and I was not going to let no one in there unless I did know who it was.

\* \* \* \* \* \*

"Q. Did you pick up these papers that the Marshal left? A. No, sir.

"Q. Did they remain on the floor? A. They did.

"Q. How long? A. I don't know.

"Q. Were they there the next morning? A. No.

"Q. Did you ever find out who took them? A. No. I didn't inquire who taken them.

\* \* \* \* \* \*

"Q. Now, you did not report to Mrs. McCulley that the papers had been left? A. No, sir; I did not.

"Q. Haven't discussed it with her at all? A. No, sir.

"Q. Why didn't you report that, Henry? A. Because I had no report, didn't know enough about it, what they was for nor nothing else.

"Q. Well, wasn't it a little bit unusual for you to leave papers on the floor there? A. No, sir. He tried to throw them in the door and they didn't hit the door, they fell on the outside and I left them lay there."

We conclude the previous ruling must stand. We have been unable to locate any case where a servant has been held to be a "person" of defendant's family who did not reside in the usual place of abode of the defendant. This janitor did not. He maintained a separate place of residence from the Washington Avenue address. He was there only certain hours during the day. There is no evidence of any relation of confidence between the defendant and the janitor on which the Court could find a reasonable assurance that the janitor would deliver service papers to the defendant. On the contrary the janitor showed a complete lack of interest in the papers. He left them lying on the floor of the porch. He did not discuss the occurrence with the defendant. The janitor's sole contact with the family of the defendant was that of an employee for hire to do a particular work, and apparently without the intelligence to do anything beyond that. The relationship had no characteristics of permanency. The janitor was nothing more than an employee for hire and not a member or person of the family of the defendant.

We recognize the force of plaintiff's argument that the service statute and rules relating to service should be given a liberal construction, but nonetheless we are without authority to disregard the plain wording of the statute that the "person" on whom service is had must be of the "family" of the defendant. There is no evidence in this case upon which to

base a holding that the negro janitor was a person of the family of the defendant.

Plaintiff's motion for new trial and rehearing on order of the Court quashing return of service of summons is overruled.